UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

LONNY BRISTOW,            Case No. 1:06-cv-02

    Plaintiff

                                                           Dlott, J.
vs                                             Black, M.J.

WILLIAM ELEBY, et al.,         **REPORT AND**
                                                         **RECOMMENDATION**
    Defendants

    Plaintiff, an inmate at the Warren Correctional Institution (WCI) in Lebanon, Ohio, brings this action pursuant to 42 U.S.C. § 1983 against William A. Eleby, Chief of the Bureau of Classification and Reception at the Ohio Department of Rehabilitation and Correction (ODRC), Terry Collins, the ODRC Deputy Director of Institutions, and Wanza Jackson, the Warden of the Warren Correctional Institution (WCI). This matter is before the Court on plaintiff's motions for issuance of a temporary restraining order and/or preliminary injunction (Docs. 3, 14, 16), defendants' memoranda in opposition thereto (Docs. 7, 21, 28), and plaintiff's memoranda in support thereof (Docs. 12, 19, 25, 29, 30, 32); plaintiff's motion to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915 (Doc. 1); and plaintiff's motion to amend the complaint for a third time. (Doc. 20). For the reasons that follow, it is recommended that plaintiff's motions for issuance of a temporary restraining order and/or preliminary injunction, to proceed *in forma pauperis*, and to amend the complaint be denied.

**I. Procedural history**

    On January 4, 2006, plaintiff submitted for filing in this Court a complaint pursuant to 42 U.S.C. § 1983, a motion for leave to proceed *in forma pauperis* which failed to include the

necessary financial information, and a motion for issuance of a temporary restraining order and/or preliminary injunction. The complaint alleges that plaintiff is a former Protective Control inmate at the Warren Correctional Institution who was recently transferred to the Southern Ohio Correctional Facility (SOCF) in Lucasville, Ohio. The complaint states that on December 16, 2005, WCI Warden Wanza Jackson requested authorization from defendant Eleby to transfer plaintiff from the WCI Protective Control Unit to the Southern Ohio Correctional Facility. Plaintiff appealed the transfer decision to Mr. Eleby, who denied the appeal and approved the transfer.

  The complaint further alleges that plaintiff's safety is seriously compromised by the transfer to SOCF. Plaintiff states he was initially placed in Protective Control in 2001 because while he was an SOCF inmate he testified against fellow SOCF Inmate Hamilton resulting in a lengthy prison sentence for Hamilton. Hamilton allegedly advised other SOCF inmates that plaintiff was a snitch. Thereafter, plaintiff allegedly received a written death threat from SOCF Inmate Reed for testifying against his "brother," a reference to the Aryan Brotherhood prison gang. Plaintiff was then transferred to the Warren Correctional Institution in August 2001 and placed in Protective Control. The complaint further alleges plaintiff informed on SOCF Inmate Ayers in 2003, resulting in Inmate Ayers' institutional conviction and loss of privileges. Plaintiff states that while Ayers is no longer at SOCF, he is affiliated with the Aryan Brotherhood prison gang who pose a threat to plaintiff. Plaintiff further alleges that in 2004, he informed on former SOCF Sergeant Rucker, who was then an inmate at SOCF. The complaint alleges that Rucker has family who currently work at SOCF. Plaintiff states that in August 2005, he informed on yet another SOCF inmate, Tim Conley,

resulting in Conley's placement in segregation. Plaintiff alleges Conley has "many friends who are placing Bristow's life in danger at SOCF." (Doc. 2, ¶74). The complaint also alleges that on December 5, 2005, plaintiff was convicted of aggravating menacing for allegedly making death threats against SOCF Warden Edwin Voorhies.

Plaintiff's complaint further alleges numerous incidents of serious misconduct on his part at WCI and other institutions throughout the State of Ohio. Plaintiff alleges that numerous requests were made to return him to SOCF because of these incidents, but that such requests were denied because he was "barred from SOCF." Plaintiff alleges that defendant Collins "guaranteed" that plaintiff would not be sent back to SOCF. (Doc. 2, ¶¶31-35).

Plaintiff further states that on January 5, 2005, defendant Eleby raised plaintiff's security level to "level 4." Plaintiff was advised that the reason for his transfer to SOCF was his security level. He alleges that seventeen other level 4 inmates reside in the WCI Protective Control Unit and have not been transferred because of their security levels. Plaintiff alleges his transfer to SOCF is actually in retaliation for the numerous lawsuits he has filed on behalf of himself and other inmates contesting "the way protective control is operated" by Ohio prison officials. (Doc. 2, ¶¶43-52). The complaint seeks an injunction transferring plaintiff back to WCI's Protective Control Unit and damages[1].

As this Court noted in its January 4, 2006 Order, Mr. Bristow is a frequent filer of frivolous lawsuits and, as a result, is barred from filing new *in forma pauperis* lawsuits in the federal court under the Prison Litigation Reform Act of 1995 (PLRA), 28 U.S.C. 1915(g).

---

[1] In 2005, plaintiff filed a separate complaint seeking a transfer *out* of WCI's Protective Control Unit. *See Bristow v. Crawford*, Case No. 1:05-cv-165 (Doc. 1). That case was voluntarily dismissed by plaintiff on December 28, 2005.

3

*See Bristow v. Huffman,* C-1-99-385 (S.D. Ohio May 24, 1999)(Spiegel, J.)(Doc. 3). In view of this bar, the Court noted that plaintiff may not proceed *in forma pauperis* in the instant case unless the statutory exception applies, that is, unless he "is under imminent danger of serious physical injury." § 1915(g). Because the facts alleged in plaintiff's complaint, if true, suggests he is under imminent danger of serious physical injury by his transfer to SOCF, the Court found he would meet the exception for proceeding *in forma pauperis* assuming he in is in fact otherwise financially qualified. Accordingly, the Court ordered plaintiff to submit a certified copy of his trust fund account statement or pay the full filing fee of $250 pursuant to 28 U.S.C. § 1915(a)(2). (Doc. 4). Given the serious nature of plaintiff's allegations, the Court also ordered defendants to file a response to plaintiff's motion for issuance of a temporary restraining order and/or preliminary injunction. (Doc. 4).

Defendants submitted their response to the motion on January 10, 2006. (Doc. 7). Defendants assert that contrary to plaintiff's claim, he is not currently at SOCF. While such a transfer is being considered, he is not now at SOCF and therefore is not in imminent danger as he claims. Defendants assert that during the time that Mr. Bristow has been at WCI, he has committed numerous disciplinary infractions. Prior to WCI, he was incarcerated at the Toledo Correctional Institution where he was charged with and convicted of credit card fraud. He was then transferred to the Trumbull Correctional Institution (TCI) where he was ultimately charged with and convicted of ethnic intimidation (aggravated intimidation, menacing and threats to staff). He was then transferred to WCI Protective Control (PC) where he has continued to create problems. As a result, it has been determined that he needs to be transferred to the only maximum security prison in Ohio, the Southern Ohio Correctional

4

Facility (SOCF). The SOCF inmates with whom he has had problems, Hamilton, Reed, Ayers, and Sgt. Rucker, no longer reside at SOCF. (Doc. 7, Eleby Aff. ¶¶6-11). Thus, defendants contend he would be in no more danger at SOCF than at any other institution based on the number of issues that he has created for himself.

Plaintiff subsequently filed an amended complaint and renewed his motion for issuance of a temporary restraining order and/or preliminary injunction alleging additional facts. (Docs. 10, 12, 14). Plaintiff admits he was never transferred to SOCF and is still incarcerated at the Warren Correctional Institution. Plaintiff explains that at the time he filed the lawsuit, he thought he would be transferred and anticipated the Court would receive his complaint at about the same time he arrived at SOCF. To date, plaintiff is still incarcerated at WCI.

Additionally, plaintiff presents evidence that the first Protective Control Committee that considered his placement recommended he remain in Protective Control for his safety. The Warden declined to accept this recommendation and recommended a transfer to SOCF due to plaintiff's "continuous violations of institutional rules of conduct and [his] efforts to involve other protective control inmates in committing illegal activity." (Doc. 12, Exh. C). At the time this information was presented to the Court, William A. Eleby, the ODRC Chief of the Bureau of Classification and Reception and the official responsible for making the final determination on transfers, had not yet made a final decision in plaintiff's case. (Doc. 7, Eleby Aff.). A second Protective Control (PC) Review Committee was appointed to meet with plaintiff concerning his continued placement in PC. (Doc. 12, Exh. C; Doc. 13, Exh. B). In light of this new evidence, the Court ordered defendants to provide additional evidence

concerning plaintiff's security level and need for Protective Custody placement. (Doc. 18). That evidence shows the following:

On January 4, 2006, the Protective Control Review committee recommended Bristow be retained in PC. (Doc. 21, Exh. J; Doc. 29, Exh. N).  The control placement and history portion of the form states, "Bristow was a former P.C. inmate at WCI.  Sent to M.C.I. and then to P.C. at ToCI.  Original P.C. was due to testimony ag[ainst] inmate Hamilton.  He received death threats (verbal and written)." (Doc. 21, Exh. J; Doc. 29, Exh. N).  The reasons for recommending Bristow be retained in Protective Control are as follows: "Institutional separation at SOCF w/[inmate] Goad as well as documents presented by Bristow and statement provided by David See, SOCF Institutional Investigator." *Id*.

On January 5, 2006, WCI Warden Jackson disapproved the committee's recommendation. (Doc. 21, Exh. J; Doc. 29, Exh. N).  On January 10, 2006, Warden Jackson notified Bristow she denied his appeal due to his "continuous violations of institutional rules of conduct and [his] efforts to involve other protective control inmates in committing illegal activity." (Doc. 29, Exh. O).   Warden Jackson determined that Bristow's "behavior seriously disrupts the order in the protective control unit at WCI" and that "ODRC has the capability to make accommodations for placement elsewhere." (Doc. 29, Exh. O).  That same day, Warden Jackson appointed a second PC committee to interview Bristow for possible release from Protective Control to SOCF. (Doc. 21, Exh. I; Doc. 29, Exh. P).  That committee recommended release from PC, and on January 30, 2006, Warden Jackson denied plaintiff's objection to the protective control decision.  The warden advised Bristow he has the right to appeal to William Eleby, Chief of the Bureau of Classification and Reception. (Doc. 21, Exh.

K; Doc. 29, Exh. T).

Defendants present the affidavit of WCI Warden Jackson, who is responsible for the oversight of all of the units of the institution, including the Protective Control unit. (Doc. 21, Jackson Aff. ¶3). In support of the actions taken in this case, Warden Jackson states:

> In January, 2005, Inmate Lonny Bristow, who had previously been at WCI in PC was returned to us from Trumbull Correctional Institution (TCI).
>
> He was returned because he had been charge with making written threats to kill several staff . . . at TCI. (Ex. A).
>
> As a result, his security level was raised from level 3 to level 4-B.
>
> He was also charged in outside court for the offenses.
>
> Since coming to WCI, he has been almost exclusively in segregation because of his high security classification and because of some rule violations.
>
> Mr. Bristow has had six rule violations since he has returned to WCI.
>
> Prior to his transfer from TCI to WCI, Mr. Bristow had sent an informal complaint to the Warden at TCI, that he did not want to have his security level increased and did not want to go to WCI. He indicated that he would not be there very long because he would cause blood shed upon WCI's staff. (Ex. B)
>
> The warden answered that he was approved for 4-B and would be going to WCI. (*Id.*)
>
> As soon as he received that response, he wrote 2 highly disrespectful and threatening letters back to the warden. (Ex. C).
>
> Despite the fact that he had threatened to destroy his cell if he was returned to PC at WCI, we attempted to control his behavior.
>
> On January 26, 2005, when Mr. Bristow was placed in his PC segregation cell, he threatened that he would not be in the cell very long. Five minutes later he kicked in his cell door and then he kicked off the metal pipe under the sink and threw it through the cell door, shattering it completely. He received a conduct report for this behavior. (Ex. D).
>
> On February 10, 2005, he was placed in Local Control (LC) segregation after he had written threatening kites stating he was going to kill a corrections officer at WCI. (Ex. E).
>
> Once Mr. Bristow was placed in LC he was reviewed once a month. Each month I concurred with the LC Committee's recommendation that he remain in LC. My signature appears in each of the reviews. On June 6, 2005, I approved his release from LC. (Ex. F).

During the summer and into the fall, he was in general population but had to be transported back and forth to TCI for court appearances relating to the violation he had committed there.

On October 25, 2005, pursuant to an investigation conducted by my chief investigator, Mr. Bristow was found to have committed a telephone fraud by obtaining and using stolen credit cards. (Ex. G).

He was immediately placed in segregation and a security review was conducted on December 15, 2005.

I determined that the review was null and void because it was not done correctly.

A PC review was held to determine whether Mr. Bristow should be released from PC and transferred to a more secure institution. (Ex. H)

The only institution to which he could be sent was Southern Ohio Correctional Facility (SOCF).

The PC Review Committee was concerned because he had a separation at SOCF and had difficulty there once before and recommended he stay in PC.

Despite this, it was my opinion that the department would be able to protect him and that it was important that he be sent to a more secure facility based upon his behavior and I overrode the committee's recommendation.

Mr. Bristow objected to the potential of being released and more specifically to the transfer to SOCF.

Pursuant to O.A.C. § 5120-9-14 H3, once an inmate appeals the release from PC, a second committee is formed to reconsider the matter.[2]

I made this request on January 10, 2006, (Ex. I) and requested that their recommendation be sent to my office no later than January 20, 2006.

I sent a letter to Mr. Bristow informing him of this. (Ex. J).

The committee recommended he be released from PC and transferred.

Mr. Bristow has been notified of this decision and is entitled to appeal it. So far I have not received a Notice of Appeal from him. Whether he appeals or not, the final decision will then go to the Bureau of Classification (BCI).

I have determined that Mr. Bristow currently has no separations from any inmates at SOCF. Furthermore, it is my professional opinion that the Ohio Department of Rehabilitation and Correction (ODRC) can accommodate the

---

[2] ODRC Policy No. 55-SPC-03 Section VI(H)(3) states, "When the Protective Control Committee, Warden/designee or Director/designee recommends release from protective control over the objections of the inmate, the Warden shall appoint a three-person committee made up of persons different from those originally making the recommendation for release. Procedures described in section IV, B shall be initiated, including the appeal procedure to the Chief of the Bureau of Classification." (Doc. 21, Exh. C).

>needs and concerns of Mr. Bristow and that he is not in imminent danger.
>
>Assuming that he is transferred to SOCF, his entire record will be sent there.
>
>All inmates at SOCF are single celled.
>
>All 4-B inmates at SOCF cannot leave their cell unless they are handcuffed, leg ironed and escorted.
>
>I do not believe that Mr. Bristow will be in any more jeopardy at SOCF than he would be at any other institution. However, his past behavior demonstrates that he needs the higher security that SOCF provides.

(Doc. 21, Exh. D, Jackson Aff. ¶¶4-33).

Plaintiff has filed a "notice of death threat received from SOCF" (Doc. 25), to which is attached a letter purportedly from SOCF inmate "J. Jackson #442-911" which allegedly makes threats against Mr. Bristow's life. In response, defendants present evidence that there is no inmate "J. Jackson" currently incarcerated at SOCF and the inmate number included in the return address is assigned to a former inmate who was paroled from the Mansfield Correctional Institution on July 8, 2004. (Doc. 28, Exh. A). Defendants contend that Mr. Bristow has fabricated the alleged death threat. Plaintiff states he did not turn "this evidence over to staff at WCI" because they do not care about his safety and it would have "disappeared." (Doc. 25 at 2). Plaintiff disputes this letter is a fabrication. (Doc. 32).

However, plaintiff does not dispute the numerous incidents of his misconduct over the past few years. (Doc. 29 at 2-3). In fact, plaintiff highlights additional acts of property destruction, threats against staff members, assaults on corrections officers, credit card/phone fraud, and threats to kill inmates and staff at the Trumbull and Warren Correctional Institutions. (Doc. 29 at 2). He argues that if this misconduct was not bad enough to get him transferred to SOCF, his most recent credit card/phone scam cannot justify his transfer. He

9

intimates that prison officials were at fault for not placing him on a phone restriction at WCI so he could not commit the offense. (Doc. 29 at 3). He also argues that when he was disciplined by the Rules Infraction Board for the offense, he was not sentenced to release from PC to a more restrictive unit. To do so now, he contends, is tantamount to a due process violation.[3]

Plaintiff also points to the Protective Control Review committee decision of January 4, 2006, which recommended he be retained in PC because of "separation at SOCF w/[inmate] Goad as well as documents presented by Bristow and statement provided by David See, SOCF Institutional Investigator." (Doc. 29, Exh. N). Plaintiff admits that Inmate Goad is no longer at SOCF (Doc. 29 at 5), but objects to defendants' failure to present David See's statement in accordance with this Court's previous order to provide additional non-hearsay evidence from the decision-makers at each level concerning the steps taken to review plaintiff's security level and need for Protective Custody placement.

Plaintiff also objects to the number of PC committees which have been convened to hear his case. He states Warden Jackson has violated policy by convening three committees instead of the two committees provided for under the regulations. He also argues this amounts to "multiple interviews" within one monthly period in violation on DRC policy 55-5PC-03(G)(1) and violates due process. (Doc. 29, Exh. J).[4]

Plaintiff also takes issue with the verity of the evidence presented by defendants. He

---

[3] Plaintiff has no § 1983 due process claim based upon his anticipated transfer to SOCF because such institutional tranfers do not rise to the level of an atypical and significant hardship under the Supreme Court's analysis in *Sandin v. Conner*, 515 U.S. 472 (1995).

[4] *See* footnote 3, *supra*.

disputes that his security level was increased from level 3 to level 4B after he threatened staff at TCI. He points to documents showing that he made the threats on January 7, 2005, two days after his security status was increased and therefore his security status could not have been increased due to the threats. (Doc. 29, Exhs. A, B, C).

**II. The motion for issuance of a temporary restraining order/preliminary injunction should be denied.**

In determining whether to issue a temporary restraining order/preliminary injunction in this matter, the Court balances the following factors:

1. Whether the party seeking the injunction has shown a substantial likelihood of success on the merits;

2. Whether the party seeking the injunction will suffer irreparable harm absent the injunction;

3. Whether an injunction will cause others to suffer substantial harm; and

4. Whether the public interest would be served by a preliminary injunction.

See *Procter & Gamble v. Bankers Trust Co.*, 78 F.3d 219, 226 (6th Cir. 1996), citing *Mason County Medical Ass'n v. Knebel*, 563 F.2d 256, 261 (6th Cir. 1977)(applying preliminary injunction factors to motion for temporary restraining order). See also *U.S. v. Bayshore Associates, Inc.,* 934 F.2d 1391, 1398 (6th Cir. 1991); *In Re King World Productions, Inc.*, 898 F.2d 56, 59 (6th Cir. 1990); *Project Vote! V. Ohio Bureau of Employment Services*, 578 F. Supp. 7, 9 (S.D. Ohio 1982) (Spiegel, J.).

The Court finds that plaintiff has not presented evidence sufficient to warrant a temporary restraining order/preliminary injunction. Plaintiff has failed to establish a substantial likelihood of success on the merits of his claim, and to show he will suffer irreparable harm in the absence of an injunction.

When he initially brought this case, plaintiff stated he had already been transferred to SOCF and was at imminent risk of serious harm. The only reason this Court issued an order permitting this matter to immediately proceed despite plaintiff's failure to present the necessary financial information was because plaintiff represented he had already been transferred out of Protective Custody to SOCF and alleged facts suggesting deliberate indifference to his safety on the part of prison officials. As the Court now knows, plaintiff has not been transferred to SOCF. For the past month and one-half plaintiff's case has been winding its way through the prison's internal process for releasing Protective Control inmates. No final decision has yet been made at the Departmental level on plaintiff's release from protective control and transfer to SOCF. The Chief of the Bureau of Classification, Mr. Eleby, makes the final determination on whether an inmate should be released from protective control. Ohio Admin. Code § 5120-9-14(H). Section 5120-9-14, which governs the placement of Protective Control inmates, provides in relevant part:

> If it is determined that continued placement in protective control is unnecessary the warden shall forward the recommendation, along with other relevant documentation to the bureau of classification. The *bureau of classification shall make the final determination* and effectuate any necessary institutional transfer.

Ohio Admin. Code § 5120-9-14(H)(emphasis added).

There is no evidence that plaintiff appealed Warden Jackson's decision to defendant Eleby or that defendant Eleby has made a final decision on the transfer. At the time Bristow filed his complaint and motion for preliminary injunctive relief, the administrative process was not even close to being exhausted. Nor is it exhausted now. This case highlights the necessity of allowing the prison administrative process to run its course. This is not to say the Court should not or will not intervene in cases where inmates are truly in imminent danger as the PLRA instructs. After review of the entire record presented in this matter, however, the Court concludes this is not such a case. Because plaintiff has not exhausted his available administrative remedies, he cannot show that he is in imminent danger or would likely succeed on the merits of his claim.

Even if a final decision had been made by Mr. Eleby, plaintiff nevertheless fails to show a likelihood of success on the merits of his deliberate indifference to safety claim. To establish his Eighth Amendment claim against prison officials based on their failure to protect him from attack by other inmates, plaintiff must present evidence showing that defendants' conduct amounts to "deliberate indifference" to a known risk of harm to plaintiff. *Farmer v. Brennan*, 511 U.S. 825 (1994). *See also Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Gibson v. Foltz,* 963 F.2d 851, 853 (6th Cir. 1992); *Marsh v. Arn,* 937 F.2d 1056, 1060-61 (6th Cir. 1991); *Walker v. Norris*, 917 F.2d 1449, 1453-54 (6th Cir. 1990). A prison official may be held liable for his failure to protect inmates from attacks by other inmates only if he knows that an inmate faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. Prison officials must exhibit more than lack of due care for a prisoner's safety before an Eighth Amendment

violation will be found. *Id*. at 835; *Gibson,* 963 F.2d at 853. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. It is not enough that the official "should" have perceived a significant risk, but did not. *Id.* Moreover, liability will not be found where a prison official actually knew of a substantial risk of harm to an inmate if he responded reasonably to the risk, even if the harm ultimately was not averted. *Farmer*, 511 U.S. at 844.

In the instant case, the second Protective Control committee and WCI Warden Jackson both recommended release from protective control and transfer to SOCF due to Bristow's "continued violations of institutional rules of conduct and [his] efforts to involve other protective control inmates in committing illegal activity. [His] behavior seriously disrupts the order in the protective control unit at WCI. ODRC has the capability to make accommodations for placement elsewhere." (Doc. 21, Exh. K; Doc. 29, Exh. T). Mr. Bristow does not dispute the numerous rules violations and acts of misconduct with which he has been charged. Rather, he disagrees with the penalties imposed and that his behavior justifies an increase in his security classification and transfer to SOCF. It is not for this Court to decide the appropriate punishments for prisoners, how best to run a prison, or how best to maintain security or control of an institution. "Prison administrators . . . should be accorded wide-ranging deference in the . . . execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). Such deference does not insulate from review actions taken in bad faith and for no legitimate purpose, but it requires that the Court not

"freely substitute [its] judgment for that of officials who have made a considered choice." *Whitley v. Albers*, 475 U.S. 312, 322 (1986). The only question for the Court is whether defendants are deliberately indifferent to Bristow's safety. The evidence shows that defendants have followed the procedure set forth in the regulations for assessing the need for and appropriateness of plaintiff's continued placement in Protective Control at WCI. Here, officials are faced with limited options for dealing with an especially difficult and dangerous inmate, one who repeatedly threatens to cause "bloodshed" upon prison staff (Doc. 29, Exh. B) and to "create mass chaos" in the prison. (Doc. 29, Exh. C). In a telling testimonial to this mind set, Mr. Bristow himself submits evidence showing his intent to create havoc in the prison:

> "You bitches ratified that I represent a 'current threat to the safety of others.' As sure as I am standing here writing you this letter, I AM GOING TO LIVE UP TO THAT! I'm gonna do my very best to tear a c.o.'s head off his/her bitch ass shoulders–no need to worry about pressing the man down button, I will call in the signal 3 on the c.o.'s walkie talkie as he lay there in a pool of blood DYING! I have NOTHING but violent thoughts in my head of how I can hurt you bitches in the worst way physically!"

(Doc. 29, Exh. C, emphasis in the original). While plaintiff has submitted these threatening letters in support of his argument that, contrary to defendants' representations, his security level was in fact raised before he made such threats, what Mr. Bristow fails to appreciate is the import of his threats and misconduct, and the difficulty of running a safe and secure prison in the face of such actions. Bristow's repeated threats, violence, and acts of misconduct throughout his period of incarceration amply support the administration's concern that Bristow needs a more secure environment than the WCI Protective Control unit. True to his word, plaintiff has lived up to those threats and now finds himself faced with an institutional

transfer to a maximum security institution. The question for the court is not whether the prison administrators here are making or made the "right" decision. Rather, the question is whether they are being deliberately indifferent to Bristow's safety. *Farmer*, 511 U.S. at 844. Officials here have made a considered choice based on Bristow's past history and continued misconduct at WCI that the security of the Protective Control unit at WCI is compromised by his continued placement therein. The Court should defer to the judgment of prison officials on plaintiff's protective custody placement and transfer in the absence of substantial evidence showing such deference is not warranted. Plaintiff has failed to make such a showing and to establish he will suffer irreparable harm in the absence of an immediate injunction in this case.

For the above reasons, it is hereby **RECOMMENDED** that plaintiff's motions for issuance of a temporary restraining order and/or preliminary injunction be **DENIED**.

### III. Plaintiff's motion to proceed in forma pauperis should be denied.

It is further **RECOMMENDED** that plaintiff's motion to proceed *in forma pauperis* be **DENIED**. Even assuming plaintiff is otherwise financially qualified,[5] for the reasons set forth herein, plaintiff has not established he is under imminent danger of serious physical injury such that the exception to the three strike rule exists under 28 U.S.C. § 1915(g). If this recommendation is adopted, plaintiff should be ordered to pay the $250 filing fee within thirty (30) days and notified that his failure to pay the full filing fee within thirty days will result in the dismissal of his action. *See In re Alea*, 286 F.3d 378, 382 (6th Cir.), *cert. denied*, 537 U.S. 895

---

[5] The Court has never received the requested financial information from plaintiff or the institutional cashier.

(2002).

**IV.  Plaintiff's motion to amend the complaint should be denied.**

It is also **RECOMMENDED** that plaintiff's motion to amend the complaint be **DENIED**.  Plaintiff seeks to name three additional defendants in this case.  To permit an amendment in this case for a third time would be futile.


Date:  2/26/2006                                  s/Timothy S. Black
                                                  Timothy S. Black
                                                  United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

LONNY BRISTOW,                  Case No. 1:06-cv-02
    Plaintiff

                                            Dlott, J.
    vs                                        Black, M.J.

WILLIAM ELEBY, et al.,
    Defendants

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO THIS R&R**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **TEN (10) DAYS** after being served with a copy thereof. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **TEN DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).